IN THE UNITIED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Michael Lee Sawer, RPM Automation Inc., <br><br> Plaintiffs, <br><br> vs. <br><br> Brian Jacob Fehr, individually, Brian Fehr Group Holdings,  Ltd., <br><br> Defendants. | C/A NO.:  2:26-cv-01667-RMG <br><br><br> **COMPLAINT** |

**TO:  THE ABOVE NAMED- DEFENDANTS**

COMES NOW, Plaintiffs Michael Lee Sawer ("Sawer") and RPM Automation, Inc., ("RPM Automation") (together "Plaintiffs"), by and through their counsel of record Brewer Law Firm, LLC, and hereby complain against Brian Jacob Fehr and Brian Fehr Group Holdings, Ltd., (together "Defendants"), above named, as follows:

## INTRODUCTION

1.      Plaintiff RPM Automation, Inc., is a Delaware Corporation that owned a 7.5% interest in Real Performance Machinery, LLC ("RPM, LLC").

2.      Plaintiff Michael Sawer is a resident of the State of Florida and owned a 68% ownership interest in RPM, LLC.

3.      Pursuant to several membership interest purchase agreements, both RPM Automation and Sawer sold their interests in RPM, LLC.

4.      Peak NA RPM Acquisition, Inc., ("Peak RPM") is a Delaware Corporation that purchased the Membership Interests of RPM, LLC from Sawer and RPM Automation.

1

5.      Defendant Brian Jacob Fehr ("Fehr") was at all relevant times the Director of Peak RPM.

6.      Fehr, both individually, and by and through his company Brian Fehr Group Holdings, Ltd., ("BFG"), expressly assumed all payment obligations, indebtedness, and all governing terms of the Promissory Note between Peak RPM and Plaintiff Sawer, said Promissory Note is payable to Plaintiff Michael Sawer.

7.      Fehr executed a Limited Payment Guaranty dated January 31, 2024 (the "Guaranty"), personally guaranteeing the payment obligations of Peak RPM under the Promissory Note described herein.

8.      Peak RPM is now bankrupt, which leaves Fehr and BFG as the obligors to the promissory notes payable to Sawer and RPM Automation.

## PARTIES

9.      Plaintiff RPM Automation, Inc., is a Delaware Corporation. RPM Automation, Inc., owned a 7.5% interest in RPM, LLC, and sold its 7.5 % interest to Peak RPM in 2024.

10.     Plaintiff Michael Lee Sawer is a resident of Florida and was the former majority shareholder in RPM, LLC, owning 68% interest in RPM, LLC before selling them to Peak RPM on January 31, 2024.

11.     Real Performance Machinery, LLC, is a South Carolina Limited Liability Company and which is doing business in South Carolina.

2

12.     Defendant Brian Jacob Fehr is an individual who is a resident of the Province of British Columbia, Canada and, upon information and belief, is doing business in the State of South Carolina.

13.     Defendant Brian Fehr Group Holdings, Ltd. is a company incorporated under the laws of the Province of British Columbia, Canada and, upon information and belief, is doing business in the State of South Carolina.

14.     Non-party Peak NA US RPM Acquisition, Inc., is a Delaware corporation that was the original Maker of the Promissory Note. Upon information and belief, Peak RPM is now bankrupt and unable to satisfy its obligations under the Promissory Note.

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is action is predicated on diversity of citizenship. The amount in controversy exceeds $75,000.00, exclusive of interests and costs.

16.     This Court has personal jurisdiction, whether general or specific, over this matter because the underlying transactions, promissory notes, and other documents that were signed and executed by Plaintiffs and Defendants alike mandate that South Carolina shall be the proper venue for this matter and requires that South Carolina law govern any and all claims pertaining to this matter, such as to incur specific jurisdiction within the State of South Carolina.

17.     Moreover, the contracts and agreements herein concern manufacturing facilities that, at the time of the agreements, were located in the State of South Carolina.

3

18.     Venue and jurisdiction in the forum State of South Carolina are proper because Defendants Fehr and BFG expressly consented to the jurisdiction of South Carolina's courts by assuming and guaranteeing the payments and obligations of Peak RPM's Promissory Note, pursuant to Peak RPM's Membership Interest Purchase Agreement of RPM, LLC, dated January 31, 2024.

19.     Accordingly, this Court has personal jurisdiction over both Defendants, and venue is proper in the Charleston Division of the District of South Carolina.

## FACTUAL BACKGROUND

### I.     Plaintiff Sawer's Membership Interest Purchase Agreement

20.     On January 31, 2024, Plaintiff Sawer, Peak RPM, Fehr (as Guarantor), RPM, LLC, and Sealake Associates, LLC entered into a Membership Interest Purchase Agreement (the "Sawer MIPA"), pursuant to which Plaintiff Sawer agreed to sell, and Peak RPM agreed to purchase, Plaintiff Sawer's Sixty-Eight percent (68%) Membership Interest in RPM. See, Exhibit A; January 31, 2024 Sawer Membership Interest Purchase Agreement.

21.     The Sawer MIPA, executed by Plaintiff Sawer as Seller, Peak RPM as Buyer, and Fehr as Guarantor, provides that any legal suit, action or proceeding arising out of or based upon the Sawer MIPA and/or the Ancillary Documents (which include the Promissory Note, the Guaranty, and the Membership Interest Pledge Agreement) "May be instituted in the federal courts of the United States of America or the courts of the State

of South Carolina in each case located in Charleston County," and that "each party irrevocably submits to the exclusive jurisdiction of such courts." See, Ex. A Section 11.09.

22.     The total purchase price for Plaintiff Sawer's Membership Interest was $20,160,000.00, to be paid pursuant to a Non-Negotiable Promissory Note (the " Sawer Promissory Note"). See, Ex. B; January 31, 2024 Sawer Non-Negotiable Promissory Note.

23.     In connection with the Sawer MIPA, Peak RPM, as Maker, executed and delivered to Plaintiff, as Payee, the Sawer Promissory Note, in the principal amount of Twenty Million One Hundred Sixty Thousand and 00/100 Dollars ($20,160,000.00). See, Ex. B.

24.     The Sawer Promissory Note provides that it is governed by the laws of the State of South Carolina and that the Maker irrevocably consents to personal jurisdiction in the Courts of Charleston County, South Carolina, or the United States Courts located within the State of South Carolina. See, Ex. B.

25.     The Sawer Promissory Note provides that it **"shall be construed in accordance with and governed by the laws of the State of South Carolina**" and that "**in any litigation in connection with or to enforce this Note, Maker irrevocably consents to and confers personal jurisdiction on the Courts of Charleston County, State of South Carolina or the United States Courts located within the State of South Carolina.**" The Sawer Promissory Note further provides that the Maker "expressly waives any objections as to venue in any such Courts."

5

26.    The Sawer Promissory Note bears interest at the rate of seven percent (7.0%) per annum on the outstanding unpaid principal balance.

27.    Contemporaneously with the execution of the Sawer MIPA and the Sawer Promissory Note, Defendant Brian Jacob Fehr executed and delivered to Plaintiff a Limited Payment Guaranty dated January 31, 2024 (the "Sawer Guaranty"), in which Fehr absolutely, unconditionally, and irrevocably guaranteed, as primary obligor and not merely as surety, the full and punctual payment of all amounts due under the Promissory Note. See, Ex. C; January 31, 2024, Sawer Limited Payment Guaranty.

28.    The Sawer Guaranty provides that Fehr's total liability is limited to an aggregate amount of $20,160,000.00 plus (a) interest due under the Promissory Note and (b) the expenses and costs, including reasonable attorney's fees, of enforcing the Sawer Guaranty and the Sawer Promissory Note. See, Ex. C.

29.    The Guaranty is a guaranty of payment and not of collection. Plaintiff is not obligated to enforce or exhaust its remedies against the Maker or under the Promissory Note before proceeding to enforce the Guaranty against Fehr.

30.    The Guaranty also states: "This Guaranty shall be governed by and construed under the laws of the State of South Carolina, without reference to any choice of law doctrine." See, Ex. C.

31.    Also contemporaneously with the closing, Peak RPM executed and delivered a Purchase Money Pledge and Security Agreement (the "Sawer Pledge Agreement"), granting Plaintiff Sawer a purchase money security interest in Peak RPM's membership

6

interests in RPM, LLC, (representing 68% of the Membership Interest) as collateral for the Sawer Promissory Note obligations. See, Ex. D; January 31, 2024, Sawer Membership Interest Pledge Agreement.

32.    On February 1, 2025, Peak RPM, BFG, Fehr, and Plaintiff Sawer entered into an Assumption Agreement (the "Sawer Assumption Agreement"). See, Ex. E; Sawer Assumption Agreement.

33.    Pursuant to the Sawer Assumption Agreement, BFG, by and through its Director Brian Jacob Fehr, assumed all payment obligations of Peak RPM under the Non-Negotiable Promissory Note dated January 31, 2024 (the "Promissory Note") and in respect of the Indebtedness owed to Plaintiff Sawer, therefore conferring general and/or specific personal jurisdiction on Fehr and BFG to the United States Courts located within the State of South Carolina. See, Ex. E.

34.    The Assumption Agreement recites that Peak RPM is indebted to Plaintiff pursuant to the Promissory Note in the original principal amount of $20,160,000.00, that the first annual installment payment had been made, and that the remaining principal balance was $16,128,000, with interest accruing and payable in accordance with the terms of the Promissory Note. See, Ex. E.

35.    Pursuant to Section 1.1 of the Assumption Agreement, BFG "hereby assumes and agrees to fully and timely perform, satisfy, carry out and discharge all obligations, liabilities and commitments of Peak RPM under the Note and in respect of the Indebtedness."

36.     Section 1.3 of the Assumption Agreement provides that Plaintiff shall continue to hold possession of the Membership Interest Certificates representing 68% of the Membership Interest of RPM as collateral until Plaintiff has been paid by BFG in full on the Note. The Pledge Agreement was amended to substitute "Brian Fehr Group Holdings Ltd." for "the Pledgor" in the definition of "Liabilities."

37.     Section 1.4 of the Assumption Agreement addresses the Guaranty. Defendant Fehr expressly acknowledged and agreed that the Limited Payment Guaranty dated January 31, 2024, made by Fehr in favor of and for the benefit of Plaintiff, extends to and hereafter applies to the obligations of BFG under the Note. Specifically:

a)     Fehr expressly acknowledged and agreed that the Guaranty extends to and hereafter applies to the obligations of Peak RPM or BFG under the Promissory Note as amended;

b)     Fehr confirmed he is fully familiar with the terms and conditions of the amendments and expressly acknowledged and consented to the amendments to the Purchase Agreement, Promissory Note, and Unit Pledge;

c)     Fehr confirmed and agreed that Guarantor specifically waives any defenses based on modifications or amendments, and any defenses based on impairment of collateral; and

d)     Fehr confirmed to Plaintiff Sawer that the Guaranty remains in full force and effect as a continuing guaranty of Peak RPM's or BFG's obligations to Plaintiff

8

under the Promissory Note, including any additional indebtedness, liability or obligations arising under or as a result of the Assumption Agreement.

ASSUMPTION AGREEMENT

THIS AGREEMENT is made as of February 1, 2025.

BETWEEN:

> **PEAK NA US RPM ACQUISITION INC.**, a Delaware corporation
>
> (**"Peak RPM"**)

AND:

> **BRIAN FEHR GROUP HOLDINGS LTD.**, a company incorporated under the laws of the Province of British Columbia
>
> (**"BFG"**)

AND:

> **MICHAEL LEE SAWER**
>
> (**"MLS"**)

AND:

> **BRIAN JACOB FEHR**
>
> (**"BF"**)

RECITALS:

(A) Peak RPM is indebted to MLS pursuant to a non-negotiable promissory note dated January 31, 2024 in the principal amount of $20,160,000.00 (the "**Note**"), of which the first annual instalment payment has been made, leaving a principal balance currently outstanding of $16,128,000 with interest accruing and payable in accordance with the terms of the Note (the "**Indebtedness**").

(B) BFG desires to assume all payment obligations of Peak RPM under the Note and the Indebtedness from Peak RPM, upon and subject to the terms and conditions hereinafter set forth.

NOW THEREFORE, in consideration of the premises and the covenants and agreements herein contained, the parties agree as follows:

1. **ASSUMPTION**

**1.1 Assumption**

BFG hereby assumes and agrees to fully and timely perform, satisfy, carry out and discharge all obligations, liabilities and commitments of Peak RPM under the Note and in respect of the Indebtedness.

9

38.     Plaintiff acknowledged and accepted the assumption by BFG of the obligations of Peak RPM under the Note and Indebtedness under the terms and conditions of the Assumption Agreement.

39.     The Assumption Agreement, signed by both Fehr individually, and Fehr, as BFG's signatory, further states that: "This Agreement shall governed by and construed under the laws of the State of South Carolina…".

40.     Fehr and BFG, in purchasing the membership interest in a company with manufacturing operations in South Carolina, have established minimum contacts with the State of South Carolina and its courts as to establish specific jurisdiction concerning these South Carolina Agreements and South Carolina entities with whom Fehr and BFG have been doing business and transacting with.

41.     The Assumption Agreement, dated February 1, 2025, executed by Plaintiff Sawer and Defendants, provides that it "Shall be governed by and construed under the laws of the State of South Carolina, without reference to any choice of law doctrine" By executing the Assumption Agreement, Defendants submitted to the jurisdiction of this Court with respect to the obligations arising under the Promissory Note, Guaranty, and Assumption Agreement.

42.     Contemporaneously with the Assumption Agreement, Plaintiff Sawer, as the Seller, Peak RPM, as the Buyer, Fehr, as the Guarantor, and BFG, as the assumer of Fehr's obligations, entered into an Amending Agreement which amended certain terms of the Sawer MIPA, the Sawer Promissory Note, the Sawer Membership Interest Pledge

Agreement, and the Sawer Guaranty. <u>See</u>, Ex. F; February 1, 2025 Sawer Amending Agreement.

43.     The Sawer Amending Agreement amended the terms of the Sawer MIPA, Sawer Promissory Note, and Sawer Membership Interest Pledge Agreement by increasing the purchase price of the above-referenced agreements, note, and guaranty by Three Million Dollars ($3,000,000.00), which changed the purchase price from Twenty Million One Hundred Sixty Thousand Dollars ($20,160,000.00) to Twenty-Three Million One Hundred Sixty Thousand Dollars ($23,160,000.00). <u>See</u>, Ex. F

44.     The Sawer Amending Agreement also amended the terms of the Sawer Promissory Note and Sawer Membership Interest Pledge Agreement by reducing the percentage of Membership Interests of RPM, LLC, held by Plaintiff Sawer as security for payment of the $23,160,000.00 purchase price from 68% to 51%. <u>See</u>, Ex. F.

45.     Plaintiff Sawer continues to hold a Purchase Money security interest in Fifty-One percent (51%) of the Membership Interest of Peak RPM as collateral.

46.     The Sawer Amending Agreement  explicitly references the Sawer Promissory Note, Sawer MIPA, Sawer Membership Interest Pledge Agreement, and the Sawer Guaranty, and states that Fehr, as Guarantor:

(a) Expressly acknowledges and agrees that the Guaranty extends to and applies to the obligations of the Buyer under the Promissory Note;

11

(b) Confirms that Fehr, as Guarantor, is fully familiar with, acknowledges, and consents to the terms and conditions of the amendments set forth in the Sawer Amending Agreement'

(c) Confirms that Fehr, as Guarantor, specifically waives any defenses that Guarantor could otherwise assert based on any modifications or amendments and;

(d) Confirms to Plaintiff Sawer, as Seller, that the Sawer Guaranty remains in full force and effect as a continuing guaranty of Buyer's obligations to Plaintiff Sawer, as Seller, under the Sawer Promissory Note. See, Ex. F.

47. The Sawer Amending Agreement also states that "This Amendment shall be governed by and construed under the laws of the State of South Carolina…". See, Ex. F.

48. Upon information and belief, Peak NA US RPM Acquisition Inc. is now bankrupt and unable to satisfy its obligations under the Promissory Note.

**II.    Plaintiff RPM Automation's Membership Interest Purchase Agreement**

49. Also on January 31, 2024, Plaintiff RPM Automation (as seller), RPM, LLC (as the company), Peak RPM (as the Buyer), and Fehr (as Guarantor), entered into a Membership Interest Purchase Agreement (the "RPM Automation MIPA"), pursuant to which Plaintiff RPM Automation agreed to sell, and Peak RPM agreed to purchase, Plaintiff's Seven and a half percent (7.5%) Membership Interest in RPM, LLC. See, Exhibit G; January 31, 2024 RPM Automation Membership Interest Purchase Agreement.

50.     The RPM Automation MIPA, executed by Plaintiff RPM Automation as Seller, Peak RPM as Buyer, and Fehr as Guarantor, provides that any legal suit, action or proceeding arising out of or based upon the RPM Automation MIPA or the Ancillary Documents (which include the Promissory Note, the Guaranty, and the Membership Interest Pledge Agreement) "May be instituted in the federal courts of the United States of America or the courts of the State of South Carolina in each case located in Charleston County," and that "each party irrevocably submits to the exclusive jurisdiction of such courts." See, Ex. G, Section 11.09.

51.     The total purchase price for Plaintiff RPM Automation's Membership Interest was Two Million Four Hundred Thousand Dollars ($2,400,000.00), to be paid pursuant to a Non-Negotiable Promissory Note (the "RPM Automation Promissory Note"). See, Ex. H; June 28, 2024, RPM Non-Negotiable Promissory Note.

52.     In connection with the RPM Automation MIPA, Peak RPM, as Maker, executed and delivered to Plaintiff, as Payee, the RPM Automation Promissory Note, in the principal amount of Two Million Four Hundred Thousand Dollars ($2,400,000.00). See, Ex. H.

53.     The Promissory Note provides that it is governed by the laws of the State of South Carolina and that the Maker irrevocably consents to personal jurisdiction in the Courts of Charleston County, South Carolina, or the United States Courts located within the State of South Carolina. See, Ex. H.

54.     The Promissory Note provides that it **"shall be construed in accordance with and governed by the laws of the State of South Carolina**" and that "**in any litigation in connection with or to enforce this Note, Maker irrevocably consents to and**

13

**confers personal jurisdiction on the Courts of Charleston County, State of South Carolina or the United States Courts located within the State of South Carolina.**" The RPM Automation Promissory Note further provides that the Maker "expressly waives any objections as to venue in any such Courts."

55.     The RPM Automation Promissory Note bears interest at the rate of seven percent (7.0%) per annum on the outstanding unpaid principal balance. See, Ex. H.

56.     In connection with the RPM Automation MIPA and the RPM Automation Promissory Note, Defendant Brian Jacob Fehr executed and delivered to Plaintiff a Limited Payment Guaranty dated June 28, 2024 (the "RPM Automation Guaranty"), in which Fehr absolutely, unconditionally, and irrevocably guaranteed, as primary obligor and not merely as surety, the full and punctual payment of all amounts due under the Promissory Note. See, Ex. I; June 28, 2024 Limited Payment Guaranty.

57.     The RPM Automation Guaranty provides that Fehr's total liability is limited to an aggregate amount of $2,400,000.00 plus (a) interest due under the RPM Automation Promissory Note and (b) the expenses and costs, including reasonable attorney's fees, of enforcing the RPM Automation Guaranty and the RPM Automation Promissory Note. See, Ex. I.

58.     The RPM Automation Guaranty is a guaranty of payment and not of collection. Plaintiff is not obligated to enforce or exhaust its remedies against the Maker or under the Promissory Note before proceeding to enforce the Guaranty against Fehr.

14

59.     The Guaranty also states: "This Guaranty shall be governed by and construed under the laws of the State of South Carolina, without reference to any choice of law doctrine." <u>See</u>, Ex. I.

60.     Included as an exhibit and with reference made to the RPM MIPA, Peak RPM executed and delivered a Purchase Money Pledge and Security Agreement (the "RPM Automation Pledge Agreement"), granting Plaintiff RPM Automation a purchase money security interest in Peak RPM's membership interests in RPM, LLC, (representing 7.5% of the Membership Interest) as collateral for the RPM Automation Promissory Note obligations. <u>See</u>, Ex. J; RPM Automation Membership Interest Pledge Agreement.

61.     Plaintiff RPM Automation continues to hold possession of the Purchase Money security interest  representing Seven and a half percent (7.5%) of the Membership Interest of Peak RPM as collateral.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract- As to all Defendants)**

62.     Plaintiffs reiterate and re-allege each and every foregoing allegation as if set forth verbatim herein.

63.     As set forth herein, Plaintiffs and Defendants have entered into the following Agreements:

   a) February 1, 2025 Assumption Agreement, which BFG and Fehr  signed to assume the indebtedness of Peak RPM and agreed to fully pay and fulfill all liabilities and obligations of Peak RPM's Promissory Note on behalf and in favor of Plaintiff Sawer;

15

b) January 31, 2024 Limited Payment Guarantees, which Fehr signed as Guarantor, in favor and for the benefit of Plaintiffs Sawer and RPM.

64.    The Guarantees and Assumption Agreement constitutes valid, binding, and enforceable agreements between Plaintiffs and Defendants.

65.    The Guarantees are guarantees of payment and not of collection. Plaintiffs are not required to exhaust remedies against Peak RPM or BFG before proceeding against Fehr or BFG under the Guarantees.

66.    Plaintiffs have demanded payment from Defendant Fehr under the Guaranty, and Fehr has failed and refused to pay.

67.    Defendants have failed to make the payments due under the Promissory Note as assumed by BFG pursuant to the Assumption Agreement, and as guaranteed by Fehr pursuant to the Guaranty.

68.    Despite repeated demands by Plaintiffs, Defendants have failed and refused to cure their default and pay the amounts due and owing to Plaintiff Sawer under the Promissory Note, the Guaranty, and the Assumption Agreement.

69.    As a result of Defendants' default, Plaintiffs have been damaged in an amount equal to the outstanding principal balance, accrued and unpaid interest, late charges, and all costs and expenses of enforcement, including reasonable attorneys' fees, as provided in the Promissory Note, the Guaranty, and the Assumption Agreement.

70.    As a direct and proximate result of Defendant Fehr and BFG's breach of the Promissory Notes, Guarantees, and Assumption Agreement, Plaintiffs have suffered

actual and consequential damages as a direct and proximate result of these breaches and have been damaged in an amount to be proven at trial, but not less than the outstanding principal balance, together with accrued and unpaid interest at the rate of 7.0% per annum, late charges of 5% on missed payments, and all costs and expenses of collection and enforcement, including reasonable attorneys' fees, as provided in the Promissory Note.

71.     Plaintiffs are entitled to an award of actual and consequential damages, as well as reasonable attorney's fees and costs.

**FOR A SECOND CAUSE OF ACTION**
**(Unjust Enrichment as to all Defendants)**

72.     Plaintiffs reiterate and re-allege each and every foregoing allegation as if set forth verbatim herein.

73.     Defendants have derived and will continue to derive substantial benefits from their ownership of Plaintiffs' Membership Interests of RPM, LLC, which were transferred to Peak RPM.

74.     Defendants have unjustly benefited from Plaintiff's substantial investment of time, money, and resources, all without paying Plaintiffs the payments and interests that are due and owing pursuant to the Promissory Note.

75.     Defendants have derived and will continue to derive substantial benefits from their acquiring of Plaintiff's RPM, LLC membership interests, which Defendants have not fully paid for.

76.     Defendants' unjust appropriation of Plaintiffs' Membership Interests of RPM, LLC, is a benefit to Defendants.

77.    Defendants have knowingly accepted and retained the benefits of its unjust appropriation of Plaintiffs' Membership Interests.

78.    Defendants have not provided value to Plaintiffs in connection with or in return for its unjust appropriation of Plaintiffs' efforts and Membership Interests.

79.    The circumstances are such that it would be inequitable and unjust for Defendants to retain the benefits it has unjustly accepted and retained at Plaintiffs' expense without paying the value thereof to Plaintiffs.

80.    Plaintiffs have sustained actual and consequential damages as a direct and proximate result of Defendants' actions and are entitled to an award of damages against Defendants.

**WHEREFORE**, Plaintiffs pray for relief from this Court as follows:

1.    For a constructive trust;

2.    For injunctive relief freezing certain of the Defendants' assets;

3.    For damages in an amount in excess of $75,000 jointly and severally against all Defendants;

4.    For Treble Damages, attorneys' fees and costs as recoverable as incurred in this action;

5.    For prejudgment interest on all sums found to be due and owing; and

6.    For such other and further relief as the Court may deem just and proper.

**SIGNATURE ON NEXT PAGE**

18

**BREWER LAW FIRM, LLC**

*/s/Barrett R. Brewer*

_____

Barrett R. Brewer, Esq. .(Fed #8081)
P.O. Box 1847
510 Mill Street #2B (29464)
Mt. Pleasant, SC 29465
o: (843) 779-7454
f: (843) 779-7456
e: barrett@brewerlawfirmsc.com
Attorney for the Plaintiffs

April 17, 2026
Charleston, SC

19